# Wheeling.

## Lewis F. Watts *vs.* The State.

### July Term, 1872.

1. Evidence of a distinct, substantive offense cannot be admitted in support of another offense.

2. If a principal totally and substantially departs from the instructions of an accessory, and commits a different offense, or an additional offense, he stands single in such different or additional offense, and the other is not held responsible for it as accessory.

3. On an indictment for procuring persons to shoot,cut,stab,wound,&c. with intent to maim, &c., a certain other person, it is error to admit testimony of a rape committed by such persons after they had broken into a dwelling, where such certain other person was lodging. Because the rape was a distinct, substantive offense from that charged in the indictment, and had no connection whatever with the offense charged, and because it was a total and substantial departure from that instructed, and the defendant could not be held responsible as accessory thereto.

4. On the trial of W. for procuring certain persons to cut, shoot,stab, wound, &c., with intent, &c., one S., it is held not to be error in the court below to admit as evidence a statement that, on the evening of the day the offense was committed, W. and S. had an altercation, and W. struck at S. with a knife, whereupon S. threw a stone at W., to show the existence of a motive likely to instigate the defendant to the commission of the offense charged.

5. A case in which the verdict of guilty was not warranted by the evidence.

Indictment found October term, 1871, in circuit court of Monroe. Trial and verdict against the defendant March term, 1872. The following was certified as the facts proved on the trial:

It was proved that about nine o'clock on the night of the 19th day of September, 1871, Mr. G. V. Perry, who resides in the county of Monroe, was aroused by calls of some one at his yard gate who called for J. W. Saunders. Mr. Perry told them to go away, which they did, and he heard some one at that time calling, "Come away from there, boys!" In about

three-quarters of an hour they returned and broke open his house and entered into it, and that J. W. Saunders resided with him, Perry. Saunders was in the house at the time they entered the house; he, Saunders, when the men entered the house, was in his room up stairs, where they immediately went, and following Perry and family who retreated to Saunders' room. Saunders slipped out and escaped. It was dark in the house when they entered. Mr. Perry made his wife and daughter go up stairs to the second floor, while he, Perry, tried to keep them back, but they rushed up the stairs to the room that Saunders usually occupied, and to which Mrs. Perry and her daughter had retreated. Perry retreated up the stairs before the men; Perry did not know whether or not the men knew that was Saunders' room. It was proved that they were armed with clubs, and when they reached that room one of the men knocked Perry down and the other ravished his wife. It was proved that the house of Mr. Perry, where this was done, is in Monroe county; that John Lee Randolph and Price Pleasants were the men who broke and entered the said house, and that John Lee Randolph and Price Pleasants are negroes; that they lived within one-half mile of the house of the defendant, and within one mile of the house of Mr. Perry. It was proved that about dusk of the same evening that Saunders and the prisoner had a difficulty, in which Watts had attempted to stab Saunders, and that about half-past eight o'clock that night Tommy Watts, a son of the defendant, and a man by the name of Keadle, were seen to pass from the direction of Watts' store to the residence of John Lee Randolph and Price Pleasants, and in a few minutes passed back towards the same store with Randolph and Pleasants; that a witness tried to persuade them not to go to the defendant's store, but without effect. It was proved that about half-past eight o'clock that night, and before the house was broken open, the defendant said he would be revenged on Saunders before morning; that upon the examination of the defendant before the justice the defendant stated that he had promised to give the men, John Lee Randolph and Price Pleasants, two dollars and a half to go to whip Saunders. Three or four witnesses stated also that he had also stated that he had given them liquor; one stated that he did not hear him say any-

thing about liquor, and if he had said anything about liquor he would have heard it, but heard him say that he had promised them money.   It was proved by John Lee Randolph that a man by the name of Anderson had given him about three quarts of liquor; Watts was present when the liquor was given, and that he said he could not go to Perry's house, for they were a nice family ; the prisoner said, "Oh, no, don't go there; they are a nice family and must not be disturbed;" when Watts told them he would give them $2.50 to whip Saunders, Saunders was in sight in the wagon.   It was proved by Mrs. Perry that after Randolph and Pleasants entered her husband's house on the night aforesaid, that one of them violated her person by penetrating her person with his person. Price Pleasants, a witness, said Watts told him he would give $2 to go and whip Saunders.

The opinion of Judge Moore contains a statement of the points made in the bills of exception.

The defendant brought the case here for review.

*F. Hereford* and *C. Boggess* for plaintiff in error.

The Attorney General for the State.

MOORE J. · This case is before us on a writ of error to the judgment of the circuit court of Monroe county, on a verdict convicting the defendant, whereby he was sentenced to imprisonment in the penitentiary for the term of two years.

The indictment consisted of two clauses.   The first charged that "John Lee Randolph and Price Pleasants, on the 19th day of September, 1871, about the hour of ten o'clock in the night of that day, feloniously and burglariously did break and enter into the dwelling house of G. D. Perry, situated in the said county, with intent to make an assault upon one J. W. Saunders then and there living, and him the said J. W. Saunders, to then and there maliciously shoot, stab, cut and wound, with intent to maim, disfigure, disable and kill him, the said J. W. Saunders."

The second clause charged that Lewis F. Watts, of the said county, before the said felony and burglary was committed in form aforesaid, to-wit: on the 19th day of September, in the year aforesaid, in the county aforesaid, did feloniously counsel, procure, aid and abet the said John Lee Randolph and

Price Pleasants, to do and commit said felony and burglary in manner and form aforesaid, against the peace, &c."

The defendant upon the trial of the cause took five bills of exceptions to the rulings of the court, which make apparent the errors complained of, as especially designated by the learned counsel in his brief of assignment of error.

The rule governing the production of evidence is well settled, " that the evidence offered must correspond with the material and necessary allegations, and be confined to the point in issue." It is stated by *Mr. Greenleaf,* (1 Greenleaf's Evid. 951 a.) " It is not necessary, however, that the evidence should bear directly upon the issue. It is admissible, if it *tends* to prove the issue, or constitutes a link in the chain of proof; although, alone, it might not justify a verdict in accordance with it. Nor is it necessary that its relevancy should appear at the time when it is offered; it being the usual course to receive at any proper and convenient stage of the trial, in the discretion of the Judge, any evidence which the counsel shows will be rendered material by other evidence, which he undertakes to produce. If it is not subsequently thus connected with the issue, it is to be laid out of the case." And in section 52, he adds : " This rule excludes all evidence of *collateral facts,* or those which are incapable of affording any reasonable presumption or inference, as to the principal fact or matter in dispute ; and the reason is, that such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice, and mislead them ; and moreover, the adverse party having had no notice of such a course of evidence is not prepared to rebut it." These principles are maintained by other standard text-writers, and seem to be sustained by undoubted authority as the rule governing the production of evidence, which is in keeping with the spirit of the Federal and State Constitutions.

The constitution of this State declares, that " the accused shall be *informed* of the *character* and *cause* of the accusation," (Art. II, s. 8) : The Federal Constitution declares he " shall be *informed* of the *nature* and *cause* of the *accusation*." (U. S. Con. Art. VI.) In this case the indictment found against the prisoner, informed him that he was charged as accessory before the fact, in this, that he did feloniously counsel, pro-

cnre, aid and abet John Lee Randolph and Price Pleasants; feloniously and burglariously to break and enter into the dwelling house of G. D. Perry, with intent to make an assault upon one J. W. Saunders, to then and there shoot, stab, cut and wound the said Saunders with intent to maim, disfigure, disable and kill said Saunders.

This was the accusation against him, and for no other offence could he be tried on this indictment, and nothing should have been given in evidence which did not directly tend to the proof or disproof of the matter in issue. (1 Wharton Crim. Law § 647.) In the section just noted, Mr. Wharton citing authority, states that, "Evidence of a distinct, substantive offence, cannot be admitted in support of another offence." "So if, the accessory order or advise one crime, and the principal intentionally commit another; as, for instance, to burn a house, and instead of that he committed a larceny; or to commit a crime against A.; instead of so doing, he commit the same crime against B., the accessory will not be responsible." (Idem, § 134.)

"If the crime by the principal felon was committed under the influence of the flagitious advice of the other party, and the event, though possibly falling out beyond the original intention of the latter, was, nevertheless, in the ordinary course of things a probable consequence of that felony, he is guilty of being accessory to the crime actually committed. But if the principal, following the suggestions of his own heart, wilfully and knowingly committed a felony of another kind, on a different subject, he alone is guilty." (3 Greenleaf Evid. § 50.) And if the principal totally and substantially departs from his instructions, as if, being solicited to burn a barn, he moreover commits a robbery while so doing, he stands single in the latter crime, and the other is not held responsible for it as accessory. (3 Greenleaf Evid. § 44.)

Has the trial of this cause been governed by these principles? I think not. It was certainly improper to admit the testimony of Perry and wife as to the rape, because that was a distinct substantive offence from that charged in the indictment; (1 Wharton's Crim. Law § 647,) and had no connection whatever with the felony charged, because it was a *total* and *substantial departure* from that instructed, (3 Green-

leaf Evid. § 44,) and the defendant could not be held responsible as accessory thereto. (Idem.) The admitting of such testimony being evidence of a crime ever shocking to civilized society, was well calculated "to draw away the minds of the jurors from the points in issue, and to excite prejudice and mislead them," and thus prevent a fair, impartial verdict. The exceptions taken in admission of that evidence, should therefore have been sustained, and it was error in overruling them.

As to the fourth exception, I do not discover error. The state asked the witness, "What occurred that evening about dark, between I. W. Saunders and Lewis F. Watts." The witness testified, "that on the evening the offense charged in the indictment was committed, about dark, he was passing the store of Mr. Watts, in a wagon, about one mile from his (witnesses') house; that I. W. Saunders was in the wagon with him ; that Watts and Saunders got into an altercation, that Watts struck at Saunders with a knife, and Saunders jumped out of the wagon, and threw a stone at Watts." It seems to me that the evidence was properly admissible to show "the existence of a motive likely to instigate the defendant to the commission of the offense in question. (1 Wharton's Crim. Law, § 635 ;) and therefore the court did not err in the ruling made known by the fourth bill of exceptions.

The evidence was plainly insufficient to warrant the verdict.

The judgment should be reversed, verdict set aside, and cause remanded for a new trial.

The other judges concurred.

JUDGMENT REVERSED.